Scott S. Thomas, Bar No. 21-275
sst@paynefears.com
Sarah J. Odia, Bar No. 21-279
sjo@paynefears.com
PAYNE & FEARS LLP
4 Park Plaza, Suite 1100
Irvine, California 92614
Phone (949) 851-1100
Fax (949) 851-1212
Telephone: 949-851-1100
Facsimile: 602-344-9653

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| PULTE HOMES OF NEW MEXICO, INC., a Michigan corporation; PULTE DEVELOPMENT NEW MEXICO, INC., a Michigan corporation, | **CIVIL NO.** 1:21-cv-00996-JB-JHR |
| Plaintiffs, | **PLAINTIFFS' FIRST AMENDED COMPLAINT** |
| v. | |
| CENTRAL MUTUAL INSURANCE COMPANY, an Ohio corporation; HDI GLOBAL SPECIALTY SE  fka INTERNATIONAL INSURANCE OF HANNOVER, a New York corporation; SENTINEL INSURANCE COMPANY, LTD, a Connecticut corporation; GEMINI INSURANCE COMPANY, a Delaware corporation; COLORADO CASUALTY COMPANY, a New Hampshire corporation; THE CINCINNATI INSURANCE COMPANY, an Ohio corporation; THE CINCINNATI CASUALTY COMPANY, an Ohio corporation; DONEGAL MUTUAL INSURANCE COMPANY fka MOUNTAIN STATES MUTUAL CASUALTY COMPANY, a Pennsylvania corporation; HARTFORD CASUALTY INSURANCE COMPANY, a New Jersey corporation; ACE AMERICAN INSURANCE COMPANY, a Pennsylvania corporation; FIRST | **JURY DEMAND** |

-1-

MERCURY INSURANCE COMPANY, a
Delaware corporation; CENTURY SURETY
COMPANY, an Ohio corporation; UNITED
SPECIALTY INSURANCE COMPANY, a
Delaware corporation; OHIO CASUALTY
INSURANCE COMPANY, a New
Hampshire corporation; AMERICAN
STATES INSURANCE COMPANY, an
Indiana corporation; NAVIGATORS
INSURANCE COMPANY, a New York
corporation; NATIONAL UNION FIRE
INSURANCE COMPANY
OF PITTSBURGH, PA, a Pennsylvania
corporation; STARR INDEMNITY &
LIABILITY COMPANY, a Texas
corporation; AMERICAN HALLMARK
INSURANCE COMPANY OF TEXAS, a
Texas corporation; SOUTHERN
INSURANCE COMPANY, a Texas
corporation; NATIONAL FIRE
INSURANCE COMPANY OF
HARTFORD, an Illinois corporation; WEST
AMERICAN INSURANCE COMPANY, an
Indiana corporation; STARR SURPLUS
LINES INSURANCE COMPANY, a Texas
corporation; ENDURANCE AMERICAN
INSURANCE COMPANY, a Delaware
corporation; OLD REPUBLIC INSURANCE
COMPANY, a Pennsylvania corporation;
KNIGHT SPECIALTY INSURANCE
COMPANY, a Delaware corporation;
PELEUS INSURANCE COMPANY, a
Virginia corporation,

                    Defendants.

---

## **PLAINTIFFS' FIRST AMENDED COMPLAINT**

Plaintiffs Pulte Homes of New Mexico, Inc. and Pulte Development New Mexico, Inc.,

(collectively "Pulte" or "Plaintiffs") hereby allege as follows:

## PARTIES

1.      At all times mentioned herein, Pulte Homes of New Mexico, Inc. was and is a Michigan corporation, authorized to do business in the State of New Mexico, with its principal place of business in Georgia.

2.      At all times mentioned herein, Pulte Development New Mexico, Inc. was and is a Michigan corporation, authorized to do business in the State of New Mexico, with its principal place of business in Georgia

3.      Plaintiffs are informed and believe, and on that basis allege, that Defendant CENTRAL MUTUAL INSURANCE COMPANY ("Central Mutual") at all times mentioned herein was and is an Ohio corporation with its principal place of business in Ohio.  Upon information and belief, Central Mutual is and was at all times mentioned herein eligible to do business as an insurer in the State of New Mexico, and may be served with this Complaint by and through the Superintendent of Insurance of the State of New Mexico pursuant to Section 59A-5-32 NMSA 1978.

4.      Plaintiffs are informed and believe, and on that basis alleges, that Defendant HDI GLOBAL SPECIALTY SE fka INTERNATIONAL INSURANCE OF HANNOVER ("HDI"), at all times mentioned herein was and is a New York corporation with its principal place of business in New York.  Upon information and belief, HDI is and was at all times mentioned herein eligible to do business as an insurer in the State of New Mexico, and may be served with this Complaint by and through the Superintendent of Insurance of the State of New Mexico pursuant to Section 59A-5-32 NMSA 1978.

5.      Plaintiffs are informed and believe, and on that basis alleges, that Defendant SENTINEL INSURANCE COMPANY ("Sentinel") at all times mentioned herein was and is a Connecticut corporation with its principal place of business in Connecticut.  Upon information and belief, Sentinel is and was at all times mentioned herein eligible to do business as an insurer

in the State of New Mexico, and may be served with this Complaint by and through the Superintendent of Insurance of the State of New Mexico pursuant to Section 59A-5-32 NMSA 1978.

6.     Plaintiffs are informed and believe, and on that basis alleges, that Defendant GEMINI INSURANCE COMPANY ("Gemini") at all times mentioned herein was and is a Delaware corporation with its principal place of business in Arizona. Upon information and belief, Gemini is and was at all times mentioned herein eligible to do business as an insurer in the State of New Mexico, and may be served with this Complaint by and through the Superintendent of Insurance of the State of New Mexico pursuant to Section 59A-5-32 NMSA 1978.

7.     Plaintiffs are informed and believe, and on that basis alleges, that Defendant COLORADO CASUALTY COMPANY (Colorado Casualty") at all times mentioned herein was and is a New Hampshire corporation with its principal place of business in Massachusetts. Upon information and belief, Colorado Casualty is and was at all times mentioned herein eligible to do business as an insurer in the State of New Mexico, and may be served with this Complaint by and through the Superintendent of Insurance of the State of New Mexico pursuant to Section 59A-5-32 NMSA 1978.

8.     Plaintiffs are informed and believe, and on that basis alleges, that Defendant THE CINCINNATI INSURANCE COMPANY ("Cincinnati") at all times mentioned herein was and is an Ohio corporation with its principal place of business in Ohio. Upon information and belief, Cincinnati is and was at all times mentioned herein eligible to do business as an insurer in the State of New Mexico, and may be served with this Complaint by and through the Superintendent of Insurance of the State of New Mexico pursuant to Section 59A-5-32 NMSA 1978.

9.     Plaintiffs are informed and believe, and on that basis alleges, that Defendant THE CINCINNATI CASUALTY COMPANY ("Cincinnati Casualty") at all times mentioned herein

was and is an Ohio corporation with its principal place of business in Ohio. Upon information and belief, Cincinnati Casualty is and was at all times mentioned herein eligible to do business as an insurer in the State of New Mexico, and may be served with this Complaint by and through the Superintendent of Insurance of the State of New Mexico pursuant to Section 59A-5-32 NMSA 1978.

10.    Plaintiffs are informed and believe, and on that basis alleges, that Defendant DONEGAL MUTUAL INSURANCE COMPANY fka MOUNTAIN STATES MUTUAL CASUALTY COMPANY ("Mountain States") at all times mentioned herein was and is a Pennsylvania corporation with its principal place of business in Pennsylvania. Upon information and belief, Mountain States is and was at all times mentioned herein eligible to do business as an insurer in the State of New Mexico, and may be served with this Complaint by and through the Superintendent of Insurance of the State of New Mexico pursuant to Section 59A-5-32 NMSA 1978.

11.    Plaintiffs are informed and believe, and on that basis alleges, that Defendant HARTFORD CASUALTY INSURANCE COMPANY ("Hartford") at all times mentioned herein was and is a New Jersey corporation with its principal place of business in Connecticut. Upon information and belief, Hartford is and was at all times mentioned herein eligible to do business as an insurer in the State of New Mexico, and may be served with this Complaint by and through the Superintendent of Insurance of the State of New Mexico pursuant to Section 59A-5-32 NMSA 1978.

12.    Plaintiffs are informed and believe, and on that basis alleges, that Defendant ACE AMERICAN INSURANCE COMPANY ("ACE") at all times mentioned herein was and is a Pennsylvania corporation with its principal place of business in Pennsylvania. Upon information and belief, ACE is and was at all times mentioned herein eligible to do business as an insurer in the State of New Mexico, and may be served with this Complaint by and through the

Superintendent of Insurance of the State of New Mexico pursuant to Section 59A-5-32 NMSA 1978.

13.      Plaintiffs are informed and believe, and on that basis alleges, that Defendant FIRST MERCURY INSURANCE COMPANY ("First Mercury") at all times mentioned herein was and is a Delaware corporation with its principal place of business in New Jersey. Upon information and belief, First Mercury is and was at all times mentioned herein eligible to do business as an insurer in the State of New Mexico, and may be served with this Complaint by and through the Superintendent of Insurance of the State of New Mexico pursuant to Section 59A-5-32 NMSA 1978.

14.      Plaintiffs are informed and believe, and on that basis alleges, that Defendant CENTURY SURETY COMPANY ("Century Surety") at all times mentioned herein was and is an Ohio corporation with its principal place of business in Ohio. Upon information and belief, Century Surety is and was at all times mentioned herein eligible to do business as an insurer in the State of New Mexico, and may be served with this Complaint by and through the Superintendent of Insurance of the State of New Mexico pursuant to Section 59A-5-32 NMSA 1978.

15.      Plaintiffs are informed and believe, and on that basis alleges, that Defendant UNITED SPECIALTY INSURANCE COMPANY ("USIC") at all times mentioned herein was and is a Delaware corporation with its principal place of business in Texas. Upon information and belief, USIC is and was at all times mentioned herein eligible to do business as an insurer in the State of New Mexico, and may be served with this Complaint by and through the Superintendent of Insurance of the State of New Mexico pursuant to Section 59A-5-32 NMSA 1978.

16.      Plaintiffs are informed and believe, and on that basis alleges, that Defendant OHIO CASUALTY INSURANCE COMPANY ("Ohio Casualty") at all times mentioned herein

was and is a New Hampshire corporation with its principal place of business in Massachusetts. Upon information and belief, Ohio Casualty is and was at all times mentioned herein eligible to do business as an insurer in the State of New Mexico, and may be served with this Complaint by and through the Superintendent of Insurance of the State of New Mexico pursuant to Section 59A-5-32 NMSA 1978.

17.     Plaintiffs are informed and believe, and on that basis alleges, that Defendant AMERICAN STATES INSURANCE COMPANY ("American States") at all times mentioned herein was and is an Indiana corporation with its principal place of business in Massachusetts. Upon information and belief, American States is and was at all times mentioned herein eligible to do business as an insurer in the State of New Mexico, and may be served with this Complaint by and through the Superintendent of Insurance of the State of New Mexico pursuant to Section 59A-5-32 NMSA 1978.

18.     Plaintiffs are informed and believe, and on that basis alleges, that Defendant NAVIGATORS INSURANCE COMPANY ("Navigators") at all times mentioned herein was and is a New York corporation with its principal place of business in Illinois. Upon information and belief, Navigators is and was at all times mentioned herein eligible to do business as an insurer in the State of New Mexico, and may be served with this Complaint by and through the Superintendent of Insurance of the State of New Mexico pursuant to Section 59A-5-32 NMSA 1978.

19.     Plaintiffs are informed and believe, and on that basis alleges, that Defendant NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA ("National Union") at all times mentioned herein was and is a Pennsylvania corporation with its principal place of business in New York. Upon information and belief, National Union is and was at all times mentioned herein eligible to do business as an insurer in the State of New Mexico, and

may be served with this Complaint by and through the Superintendent of Insurance of the State of New Mexico pursuant to Section 59A-5-32 NMSA 1978.

20.     Plaintiffs are informed and believe, and on that basis alleges, that Defendant STARR INDEMNITY & LIABILITY COMPANY ("Starr") at all times mentioned herein was and is a Texas corporation with its principal place of business in New York. Upon information and belief, Starr is and was at all times mentioned herein eligible to do business as an insurer in the State of New Mexico, and may be served with this Complaint by and through the Superintendent of Insurance of the State of New Mexico pursuant to Section 59A-5-32 NMSA 1978.

21.     Plaintiffs are informed and believe, and on that basis alleges, that Defendant AMERICAN HALLMARK INSURANCE COMPANY OF TEXAS ("Hallmark") at all times mentioned herein was and is a Texas corporation with its principal place of business in Texas. Upon information and belief, Hallmark is and was at all times mentioned herein eligible to do business as an insurer in the State of New Mexico, and may be served with this Complaint by and through the Superintendent of Insurance of the State of New Mexico pursuant to Section 59A-5-32 NMSA 1978.

22.     Plaintiffs are informed and believe, and on that basis alleges, that Defendant SOUTHERN INSURANCE COMPANY ("Southern") at all times mentioned herein was and is a Texas corporation with its principal place of business in Texas. Upon information and belief, Southern is and was at all times mentioned herein eligible to do business as an insurer in the State of New Mexico, and may be served with this Complaint by and through the Superintendent of Insurance of the State of New Mexico pursuant to Section 59A-5-32 NMSA 1978.

23.     Plaintiffs are informed and believe, and on that basis alleges, that Defendant NATIONAL FIRE INSURANCE COMPANY OF HARTFORD ("National Fire – Hartford") at all times mentioned herein was and is an Illinois corporation with its principal place of business

in Illinois. Upon information and belief, National Fire- Hartford is and was at all times

mentioned herein eligible to do business as an insurer in the State of New Mexico, and may be

served with this Complaint by and through the Superintendent of Insurance of the State of New

Mexico pursuant to Section 59A-5-32 NMSA 1978.

24.     Plaintiffs are informed and believe, and on that basis alleges, that Defendant

WEST AMERICAN INSURANCE COMPANY ("West American") at all times mentioned

herein was and is an Indiana corporation with its principal place of business in Massachusetts.

Upon information and belief, West American is and was at all times mentioned herein eligible to

do business as an insurer in the State of New Mexico, and may be served with this Complaint by

and through the Superintendent of Insurance of the State of New Mexico pursuant to Section

59A-5-32 NMSA 1978.

25.     Plaintiffs are informed and believe, and on that basis alleges, that Defendant

STARR SURPLUS LINES INSURANCE COMPANY ("Starr Surplus") at all times mentioned

herein was and is a Texas corporation with its principal place of business in New York. Upon

information and belief, Starr Surplus is and was at all times mentioned herein eligible to do

business as an insurer in the State of New Mexico, and may be served with this Complaint by

and through the Superintendent of Insurance of the State of New Mexico pursuant to Section

59A-5-32 NMSA 1978.

26.     Plaintiffs are informed and believe, and on that basis alleges, that Defendant

ENDURANCE AMERICAN INSURANCE COMPANY ("Endurance") at all times mentioned

herein was and is a Delaware corporation with its principal place of business in New York. Upon

information and belief, Endurance is and was at all times mentioned herein eligible to do

business as an insurer in the State of New Mexico, and may be served with this Complaint by

and through the Superintendent of Insurance of the State of New Mexico pursuant to Section

59A-5-32 NMSA 1978.

27.     Plaintiffs are informed and believe, and on that basis alleges, that Defendant OLD REPUBLIC INSURANCE COMPANY ("Old Republic") at all times mentioned herein was and is a Pennsylvania corporation with its principal place of business in Pennsylvania. Upon information and belief, Old Republic is and was at all times mentioned herein eligible to do business as an insurer in the State of New Mexico, and may be served with this Complaint by and through the Superintendent of Insurance of the State of New Mexico pursuant to Section 59A-5-32 NMSA 1978.

28.     Plaintiffs are informed and believe, and on that basis alleges, that Defendant KNIGHT SPECIALTY INSURANCE COMPANY ("Knight Specialty") at all times mentioned herein was and is a Delaware corporation with its principal place of business in California. Upon information and belief, Knight Specialty is and was at all times mentioned herein eligible to do business as an insurer in the State of New Mexico, and may be served with this Complaint by and through the Superintendent of Insurance of the State of New Mexico pursuant to Section 59A-5-32 NMSA 1978.

29.     Plaintiffs are informed and believe, and on that basis alleges, that Defendant PELEUS INSURANCE COMPANY ("Peleus") at all times mentioned herein was and is a Virginia corporation with its principal place of business in Virginia. Upon information and belief, Peleus is and was at all times mentioned herein eligible to do business as an insurer in the State of New Mexico, and may be served with this Complaint by and through the Superintendent of Insurance of the State of New Mexico pursuant to Section 59A-5-32 NMSA 1978.

## JURISDICTION AND VENUE

30.     This Court has original jurisdiction over this action founded on diversity of citizenship pursuant 28 U.S.C. § 1332, because the matters in controversy exceed $75,000.00 per defendant, exclusive of interest and costs, and because complete diversity exists between Pulte and Defendants.

31.     Venue is proper in this Court in accordance with 28 U.S.C. § 1391.

<div align="center"><u>**GENERAL ALLEGATIONS**</u></div>

<u>**The Loma Colorado Project**</u>

32.     Pulte is a homebuilder that participated in the construction of a residential  project known as Loma Colorado (the "Project"), which is located in Sandoval County, New Mexico.

33.     Pulte performed no work on the Project; instead, subcontractors performed all of the work.

34.     Aldermill, Inc. subcontracted with Pulte to, among other things, perform the trim carpentry and painting on the Project.

35.     All Seasons Windows & Glass, LLC subcontracted with Pulte to, among other things, supply and install windows on the Project.

36.     Aspen Block, LLC subcontracted with Pulte to, among other things, perform masonry work on the Project.

37.     Aspen Concrete, LLC subcontracted with Pulte to, among other things, install the concrete foundations and flatwork on the Project.

38.     Aspen Construction, LLC subcontracted with Pulte to, among other things, install the concrete foundations and flatwork on the Project.

39.     Amestoy Dri-Wall, Inc. subcontracted with Pulte to, among other things, install the drywall on the Project.

40.     A Management d/b/a Amestoy Stucco subcontracted with Pulte to, among other things, install the stucco on the Project.

41.     Bees Construction subcontracted with Pulte to, among other things, perform framing work on the Project.

42.     Caskey Drywall NM, LLC subcontracted with Pulte to, among other things, install drywall on the Project.

43.     Chaparral Materials Inc. subcontracted with Pulte to, among other things, install drywall and windows on the Project.

44.     Chavez Lath & Plaster, Inc. subcontracted with Pulte to, among other things, install stucco on the Project.

45.     Chavez Roofing Corporation subcontracted with Pulte to, among other things, install some of the roofs on the Project.

46.     Charles M Walker subcontracted with Pulte to, among other things, install concrete slabs and foundations on the Project.

47.     ISI Design and Installation Solutions, Inc dba Creative Touch; ISI Design & Install subcontracted with Pulte to, among other things, install flooring, tile, countertops, and balcony flooring on the Project.

48.     Form-Cove Mfg. Co. subcontracted with Pulte to, among other things, install countertops on the Project.

49.     Heads Up Landscaping Contractors, Inc. subcontracted with Pulte to, among other things, perform grading and landscaping on the Project.

50.     Magnum Builders of NM, Inc. subcontracted with Pulte to, among other things, supply and install countertops on the Project.

51.     Masco dba Masco Cabinetry subcontracted with Pulte to, among other things, supply and install cabinets on the Project.

52.     Monarch Builders, Inc. subcontracted with Pulte to, among other things perform framing work on the Project.

53.     Otero & Sons Roofing Corp. subcontracted with Pulte to, among other things install roofing on the Project.

54.     Redline Mechanical, LLC subcontracted with Pulte to, among other things perform plumbing work on the Project.

55.     Southwest Realty Inc. subcontracted with Pulte to, among other things install stucco on the Project.

56.     Williams Drywall, Inc. subcontracted with Pulte to, among other things install drywall on the Project.

**The Central Mutual Policies**

57.     Aldermill, Inc. ("Aldermill") and Form-Cove Mfg. Co. ("Form-Cove") each performed work at the Project pursuant to one or more written subcontracts that it entered into with Pulte.

58.     Each subcontract required Aldermill and Form-Cove to maintain commercial general liability insurance with minimum limits of $1,000,000 combined single limit per occurrence, $2,000,000 general aggregate, and $2,000,000 products/completed operations aggregate, and to name Pulte and its affiliates as additional insureds under those insurance policies.

59.     Aldermill and Form-Cove respectively obtained the following commercial general liability policies from Central Mutual  (the "Central Mutual Policies"):

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---------|---------------|---------------|---------------|--------------------|
| Central Mutual | CLP887345810 | 7/1/09 – 7/1/10 | Aldermill | Pulte |
| Central Mutual | CLP8873458 | 7/1/10 0 7/1/12 | Aldermill | Pulte |
| Central Mutual | CLP8124294 | 4/1/08 – 4/1/09 | Form-Cove | Pulte |
| Central Mutual | CLP9579802 | 4/1/13 – 4/1/20 | Form-Cove | Pulte |

60.     The Central Mutual Policies were endorsed to cover Pulte as an "additional insured" with respect to liability arising out of Aldermill and Form-Cove's work.

61.     The coverage afforded under the Central Mutual Policies requires Defendant Central Mutual to defend and indemnify Pulte against all claims that allege (duty to defend) and

result in (duty to indemnify) liability for covered property damage or bodily injury arising out of Aldermill and Form-Cove's work or operations.

**The HDI Policies**

62.     Aldermill and Chavez Roofing Corporation ("Chavez Roofing") performed work at the Project pursuant to one or more written subcontract agreements that they entered into with Pulte.

63.     The subcontract agreements required Aldermill and Chavez Roofing to maintain commercial general liability insurance with minimum limits of $1,000,000 combined single limit per occurrence, $2,000,000 general aggregate, and $2,000,000 products/completed operations aggregate, and to name Pulte and its affiliates as additional insureds under those insurance policies.

64.     Aldermill and Chavez Roofing, respectively obtained the following commercial general liability policy from HDI (the "HDI Policies"):

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---------|---------------|---------------|---------------|--------------------|
| HDI | CPP0075055 | 1/1/09 – 1/1/10 | Chavez Roofing | Pulte |
| HDI | CPP0075055 | 1/1/10 – 1/1/11 | Chavez Roofing | Pulte |
| HDI | CPP0075055 | 1/1/11 0 1/1/12 | Chavez Roofing | Pulte |
| HDI | CPP0075055 | 1/1/12 – 1/1/13 | Chavez Roofing | Pulte |
| HDI | IG01200033800 | 1/20/12 – 1/20/13 | Aldermill | Pulte |
| HDI | IG01200033801 | 1/20/13 – 1/20/14 | Aldermill | Pulte |

65.     The HDI Policies were respectively endorsed to cover Pulte as an "additional insured" with respect to liability arising out of Chavez Roofing or Aldermill's work or operations.

66.     The coverage afforded under the HDI Policies requires Defendant HDI to defend and indemnify Pulte against all claims  that allege (duty to defend) and result in (duty to

indemnify) covered property damage or bodily injury arising out of Chavez Roofing's or Aldermill's work or operations.

**The Sentinel Policies**

67.     Aldermill, Redline Mechanical, LLC ("Redline"), and Southwest Realty, Inc. ("Southwest") each performed work at the Project pursuant to one or more respective written subcontracts that they entered into with Pulte.

68.     Each subcontract respectively required Aldermill, Redline, and Southwest to maintain commercial general liability insurance with minimum limits of $1,000,000 combined single limit per occurrence, $2,000,000 general aggregate, and $2,000,000 products/completed operations aggregate, and to name and its affiliates as additional insureds under those insurance policies.

69.     Aldermill, Redline, and Southwest respectively obtained the following commercial general liability policies from Sentinel (the "Sentinel Policies"):

| Insurer | Policy Number | Policy Period | Named Insureds | Additional Insured |
|---------|---------------|---------------|----------------|--------------------|
| Sentinel | 34SBAIW4643 | 4/10/13 – 4/10/16 | Aldermill | Pulte |
| Sentinel | 34SBAII6633 | 4/10/16 – 4/10/17 | Aldermill | Pulte |
| Sentinel | 34SBAIJ6131 | 4/10/17 – 4/10/19 | Aldermill | Pulte |
| Sentinel | 34 SBM PK5656 | 9/1/11 – 3/8/13 | Redline | Pulte |
| Sentinel | 34 SBA IW5627 | 3/8/13 – 9/1/13 | Redline | Pulte |
| Sentinel | 34 SBA IW6786 | 9/1/13 – 9/1/15 | Redline | Pulte |
| Sentinel | 34 SBA PR8679 | 9/1/15 – 9/1/16 | Redline | Pulte |
| Sentinel | 34 SBA IJ0449 | 9/1/16 – 3/1/18 | Redline | Pulte |
| Sentinel | 34 SBA VQ3230 | 2/15/08 – 10/21/10 | Southwest | Pulte |
| Sentinel | 34 SBA ZN1031 | 10/21/11-10/21/15 | Southwest | Pulte |

70.     The Sentinel Policies were endorsed to cover Pulte as an "additional insured" with respect to liability arising out of the Sentinel's named insureds' work or operations.

71.     The coverage afforded under the Sentinel Policies require Defendant Sentinel to defend and indemnify Pulte against all claims that allege (duty to defend) and result in (duty to indemnify) liability for covered property damage or bodily injury arising out of the named insureds' work or operations.

**The Gemini Policy**

72.     Chavez Roofing performed work at the Project pursuant to one or more respective written subcontracts that it entered into with Pulte.

73.     Each subcontract required Chavez Roofing to maintain commercial general liability insurance with minimum limits of $1,000,000 combined single limit per occurrence, $2,000,000 general aggregate, and $2,000,000 products/completed operations aggregate, and to name Pulte and its affiliates as additional insureds under those insurance policies.

74.     Chavez Roofing obtained the following commercial general liability policies from Gemini (the "Gemini Policy"):

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---------|---------------|---------------|---------------|--------------------|
| Gemini | VNGP001197 | 1/1/6 – 1/1/17 | Chavez Roofing | Pulte |

75.     The Gemini Policy was endorsed to cover Pulte as an "additional insured" with respect to liability arising out of Gemini's named insureds' work or operations.

76.     The coverage afforded under the Gemini Policy requires Defendant Gemini to defend and indemnify Pulte against all claims that allege (duty to defend) and result in (duty to indemnify)  liability for covered property damage or bodily injury arising out of Gemini's named insureds' work or operations.

/ / /

**The Colorado Casualty Policies**

77.    All Seasons obtained the following commercial general liability policy from Colorado Casualty (the "Colorado Casualty Policies"):

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---|---|---|---|---|
| Colorado Casualty | CBP1036544 | 3/1/12 – 3/1/14 | All Seasons | Pulte |
| Colorado Casualty | BKS55354855 | 3/1/14 – 3/1/15 | All Seasons | Pulte |
| Colorado Casualty | BKS57086967 | 3/1/15 – 3/1/16 | All Seasons | Pulte |

78.    The Colorado Casualty Policies were endorsed to cover Pulte as an "additional insured" with respect to liability arising out of All Seasons' work.

79.    The coverage afforded under the Colorado Casualty Policies requires Defendant Colorado Casualty to defend and indemnify Pulte against all claims that allege (duty to defend) and result in (duty to indemnify) liability for covered property damage or bodily injury arising out of All Seasons' work or operations.

**The Cincinnati Policies**

80.    Aspen Block, LLC ("Aspen Block"), Aspen Concrete, LLC ("Aspen Concrete"), Aspen Construction, LLC ("Aspen Construction"), Amestoy Dri-Wall, Inc. ("Amestoy Dri-Wall"), A Management dba Amestoy Stucco ("Amestoy Stucco"), Bees Construction, and Williams Drywall, Inc. ("Williams") each performed work at the Project pursuant to one or more written subcontracts that it entered into with Pulte.

81.    Each subcontract required Aspen Block, Aspen Concrete, Aspen Construction, Amestoy Dri-Wall, Amestoy Stucco, Bees Construction, and Williams respectively, to maintain commercial general liability insurance with minimum limits of $1,000,000 combined single limit per occurrence, $2,000,000 general aggregate, and $2,000,000 products/completed operations aggregate, and to name Pulte and its affiliates as additional insureds under those insurance policies.

82.     Aspen Block, Aspen Concrete, Aspen Construction, Amestoy Dri-Wall, Amestoy Stucco, Bees Construction, and Williams Drywall, Inc. ("Williams Drywall") each obtained the following commercial general liability policies from Cincinnati and Cincinnati Casualty (the "Cincinnati Policies"):

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---|---|---|---|---|
| Cincinnati | EPP0118587 | 1/1/13 – 1/1/19 | Aspen Block | Pulte |
| Cincinnati | CPP1059309 | 7/1/09 – 7/1/12 | Aspen Concrete | Pulte |
| Cincinnati | EPP0145139 | 7/1/12 – 7/1/15 | Aspen Concrete | Pulte |
| Cincinnati Indemnity | EPP0047266 | 11/1/10 – 11/1/11 | Aspen Construction | Pulte |
| Cincinnati Indemnity | EPP0058469 | 11/1/11 – 11/1/18 | Aspen Construction | Pulte |
| Cincinnati Indemnity | EPP0128663 | 2/28/12 – 2/28/16 | Amestoy Dri-Wall & Amestoy Stucco | Pulte |
| Cincinnati Indemnity | EPP0369125 | 1/1/16 – 1/1/17 | Amestoy Dri-Wall & Amestoy Stucco | Pulte |
| Cincinnati Indemnity | CAP5159936 | 4/27/08 – 4/27/11 | Bees Construction | Pulte |
| Cincinnati | EPP0181746 | 3/7/13 – 3/7/16 | Williams Drywall | Pulte |

83.     The Cincinnati Policies were endorsed to cover Pulte as an "additional insured" with respect to liability arising out of Cincinnati's named insureds' work.

The coverage afforded under the Cincinnati Policies requires Defendant Cincinnati to defend and indemnify Pulte against all claims that allege (duty to defend) and result in (duty to indemnify) liability for covered property damage or bodily injury arising out of the named insureds' work or operations.

**The Mountain States Policies**

84.     Amestoy Dri-Wall and Chavez Roofing each obtained the following commercial general liability policy from Mountain States (the "Mountain States Policies"):

/ / /

/ / /

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---|---|---|---|---|
| Mountain States | CPP 0 104420 07 | 3/31/11 – 2/28/12 | Amestoy Dri-Wall | Pulte |
| Mountain States | CPP 0 104420 06 | 3/31/10 – 3/31/11 | Amestoy Dri-Wall | Pulte |
| Mountain States | CPP 0104420 05 | 3/31/09 – 3/31/10 | Amestoy Dri-Wall | Pulte |
| Mountain States | CPP 0104420 04 | 3/31/08 – 3/31/09 | Amestoy Dri-Wall | Pulte |
| Mountain States | CPP 0075055 12 | 1/1/12 – 3/1/12 | Chavez Roofing | Pulte |
| Mountain States | CPP 0075055 11 | 1/1/11 – 1/1/12 | Chavez Roofing | Pulte |
| Mountain States | CPP 0075055 10 | 1/1/10 – 1/1/11 | Chavez Roofing | Pulte |
| Mountain States | CPP 0075055 09 | 1/1/09 – 1/1/10 | Chavez Roofing | Pulte |
| Mountain States | CPP 0075055 08 | 1/1/08 – 1/1/09 | Chavez Roofing | Pulte |

85.    The Mountain States Policies were endorsed to cover Pulte as an "additional insured" with respect to liability arising out of Amestoy Dri-Wall and Chavez Roofing's respective work.

86.    The coverage afforded under the Mountain States Policies requires Defendant Mountain States to defend and indemnify Pulte against all claims that allege (duty to defend) and result in (duty to indemnify) liability for covered property damage or bodily injury arising out of its named insureds' work or operations.

**The Hartford Policies**

87.    Caskey Drywall NM, LLC ("Caskey"), Southwest, and Williams Drywall each performed work at the Project pursuant to one or more written subcontracts that it entered into with Pulte.

88.    Each subcontract required Caskey, Southwest, and Williams Drywall to maintain commercial general liability insurance with minimum limits of $1,000,000 combined single limit per occurrence, $2,000,000 general aggregate, and $2,000,000 products/completed operations

aggregate, and to name Pulte and its affiliates as additional insureds under those insurance policies.

89.     Caskey, Southwest, and Williams Drywall, respectively obtained the following commercial general liability policy from Hartford (the "Hartford Policies"):

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---------|---------------|---------------|---------------|--------------------|
| Hartford | 34 SBA PC1119 | 3/7/08 – 3/7/13 | Williams Drywall | Pulte |
| Hartford | 46 SBM VI3457 | 7/20/09- 6/15/10 | Caskey | Pulte |
| Hartford | 65 SBM ZR4 705 | 6/15/10 – 6/15/11 | Caskey | Pulte |
| Hartford | 34 UUN QT2162 | 10/21/10 – 10/21/11 | Southwest | Pulte |
| Hartford | 34 SBM II0310 | 10/21/15 – 1/7/16 | Southwest | Pulte |

90.     The Hartford Policies were endorsed to cover Pulte as an "additional insured" with respect to liability arising out of the Hartford's named insured's work.

91.     The coverage afforded under the Hartford Policies requires Defendant Hartford to defend and indemnify Pulte against all claims that allege (duty to defend) and result in (duty to indemnify)  liability for covered property damage or bodily injury arising out of the Hartford's named insureds' work or operations.

**The ACE Policies**

92.     Chaparral Materials Inc. ("Chaparral") performed work at the Project pursuant to one or more written subcontracts that it entered into with Pulte.

93.     Each subcontract required Chaparral to maintain commercial general liability insurance with minimum limits of $1,000,000 combined single limit per occurrence, $2,000,000 general aggregate, and $2,000,000 products/completed operations aggregate, and to name Pulte and its affiliates as additional insureds under those insurance policies.

94.     Chaparral obtained the following commercial general liability policy from ACE (the "ACE Policies"):

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---|---|---|---|---|
| ACE | HDO G27020422 | 4/30/13-4/30/14 | Chaparral | Pulte |
| ACE | HDO G27332031 | 4/30/14 – 4/30/15 | Chaparral | Pulte |
| ACE | HDO G27392143 | 4/30/15 – 4/30/16 | Chaparral | Pulte |
| ACE | HDO G27405022 | 4/30/16 – 4/30/17 | Chaparral | Pulte |
| ACE | HDO G27865604 | 4/30/17 – 4/30/18 | Chaparral | Pulte |
| ACE | HDO G46770900 | 4/30/18 – 4/30/19 | Chaparral | Pulte |
| ACE | HDO G71234459 | 4/30/19 – 4/30/20 | Chaparral | Pulte |

95.     The ACE Policies were endorsed to cover Pulte as an "additional insured" with respect to liability arising out of Chaparral's work.

96.     The coverage afforded under the ACE Policies requires Defendant ACE to defend and indemnify Pulte against all claims that allege (duty to defend) and result in (duty to indemnify) liability for covered property damage or bodily injury arising out of Chaparral's work or operations.

**The First Mercury Policies**

97.     Chavez Lath & Plaster, Inc. ("Chavez Lath"), Chavez Roofing, Magnum Builders of NM, Inc. ("Magnum"), and Otero & Sons Roofing Corp. ("Otero") each performed work at the Project pursuant to one or more written subcontracts that it entered into with Pulte.

98.     Each subcontract required Chavez Lath, Chavez Roofing, Magnum, and Otero to maintain commercial general liability insurance with minimum limits of $1,000,000 combined single limit per occurrence, $2,000,000 general aggregate, and $2,000,000 products/completed operations aggregate, and to name Pulte and its affiliates as additional insureds under those insurance policies.

99.     Chavez Lath, Chavez Roofing, Magnum, and Otero respectively obtained the following commercial general liability policies from First Mercury (the "First Mercury Policies"):

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---|---|---|---|---|
| First Mercury | FMMA004817 | 10/7/11 – 10/7/12 | Chavez Lath | Pulte |
| First Mercury | 663701 | 3/1/12 – 3/1/13 | Chavez Plaster | Pulte |
| First Mercury | FMTX006556 | 11/5/09 – 11/5/10 | Magnum | Pulte |
| First Mercury | FMTX002717 | 1/22/07 – 1/22/08 | Otero | Pulte |
| First Mercury | FMTX005239 | 1/22/09 – 1/22/10 | Otero | Pulte |
| First Mercury | FMTX006845 | 1/22/10 – 1/22/11 | Otero | Pulte |
| First Mercury | FMTX008472 | 1/22/11 – 1/22/12 | Otero | Pulte |

100.    The First Mercury Policies endorsed to cover Pulte as an "additional insured" with respect to liability arising out of First Mercury's named insureds' work.

101.    The coverage afforded under the First Mercury Policies requires Defendant First Mercury to defend and indemnify Pulte against all claims that allege (duty to defend) and result in (duty to indemnify) liability for covered property damage or bodily injury arising out of the named insureds' work or operations.

**The Century Surety Policies**

102.    Chavez Lath and Magnum obtained the following commercial general liability policies from Century Surety (the "Century Surety Policies"):

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---|---|---|---|---|
| Century Surety | CCP745722 | 3/1/12 – 3/1/13 | Chavez Lath | Pulte |
| Century Surety | CCP799138 | 3/1/13 – 3/1/14 | Chavez Lath | Pulte |
| Century Surety | USA789871 | 10/21/12 – 10/21/13 | Magnum | Pulte |
| Century Surety | USA4000656 | 8/1/13 – 10/21/14 | Magnum | Pulte |

103.    The Century Surety Policies endorsed to cover Pulte as an "additional insured" with respect to liability arising out of Chavez Lath and Magnum's work.

104.    The coverage afforded under the Century Surety Policies requires Defendant Century Surety to defend and indemnify Pulte against all claims that allege (duty to defend) and result in (duty to indemnify)  liability for covered property damage or bodily injury arising out of Chavez Lath and Magnum's work or operations.

**The United Specialty Policies**

105.    Aspen Block, Monarch Builders, Inc. ("Monarch), Otero, Chavez Lath, Chavez Roofing, and Magnum each performed work at the Project pursuant to one or more written subcontracts that it entered into with Pulte.

106.    Each subcontract required Aspen Block, Monarch, Otero, Chavez Lath, Chavez Roofing, and Magnum to maintain commercial general liability insurance with minimum limits of $1,000,000 combined single limit per occurrence, $2,000,000 general aggregate, and $2,000,000 products/completed operations aggregate, and to name Pulte and its affiliates as additional insureds under those insurance policies.

107.    Aspen Block, Monarch, Otero, Chavez Lath, Chavez Roofing, and Magnum respectively obtained the following commercial general liability policies from United Specialty (the "United Specialty Policies"):

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---|---|---|---|---|
| United Specialty | ATN-ATL1811742 | 1/1/19 – 1/1/20 | Aspen Block | Pulte |
| United Specialty | ATN2025620 | 1/1/20 – 1/1/21 | Aspen Block | Pulte |
| United Specialty | FEIS51000689 | 12/11/09 – 12/11/10 | Monarch | Pulte |
| United Specialty | TWG42000442 | 12/11/10 – 12/11/11 | Monarch | Pulte |
| United Specialty | BVO1432536 | 1/1/14 – 1/1/15 | Otero | Pulte |
| United Specialty | BVO1543205 | 1/1/15 – 1/1/16 | Otero | Pulte |
| United Specialty | KSVENA160035204 | 1/1/16 – 1/1/17 | Otero | Pulte |
| United Specialty | ATNATL1750057 | 1/1/17 – 1/1/18 | Otero | Pulte |
| United Specialty | ATN-ATL1860904 | 1/1/18 – 1/1/19 | Otero | Pulte |

| United Specialty | CCP799138 | 3/1/13 – 3/1/14 | Chavez Lath | Pulte |
| United Specialty | USA4000819 | 3/1/14 – 3/1/15 | Chavez Lath | Pulte |
| United Specialty | USA4080248 | 3/1/15 – 3/1/16 | Chavez Lath | Pulte |
| United Specialty | BTO1517426 | 1/1/15 – 1/1/16 | Chavez Roofing | Pulte |
| United Specialty | USA4000686 | 10/21/13 – 10/21/14 | Magnum | Pulte |
| United Specialty | ATN-SF1711155 | 10/21/17 – 10/21/18 | Magnum | Pulte |

108.     The United Specialty Policies endorsed to cover Pulte as an "additional insured" with respect to liability arising out of United Specialty's named insureds' work.

109.     The coverage afforded under the United Specialty Policies requires Defendant United Specialty to defend and indemnify Pulte against all claims that allege (duty to defend) and result in (duty to indemnify) liability for covered property damage or bodily injury arising out of the named insureds' work or operations.

**The Ohio Casualty & American States Policies**

110.     Charles M. Walker ("CMW") performed work at the Project pursuant to one or more written subcontracts that it entered into with Pulte.

111.     Each subcontract required CMW to maintain commercial general liability insurance with minimum limits of $1,000,000 combined single limit per occurrence, $2,000,000 general aggregate, and $2,000,000 products/completed operations aggregate, and to name Pulte and its affiliates as additional insureds under those insurance policies.

112.   CMW obtained the following commercial general liability policies from Ohio Casualty and American States (the "Ohio Casualty & American States Policies"):

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---|---|---|---|---|
| Ohio Casualty | BK0(08)53583662 | 2/28/07 – 2/18/08 | CMW | Pulte |
| Ohio Casualty | BKW53583662 | 2/28/10 – 2/28/11 | CMW | Pulte |
| American States | 24CC291357 | 2/28/11 – 2/28/12 | CMW | Pulte |

| American States | 02-CE-221060-20 | 2/28/12 – 2/28/13 | CMW | Pulte |

113.   The Ohio Casualty Policies are endorsed to cover Pulte as an "additional insured" with respect to liability arising out of CMW's work.

114.   The coverage afforded under the Ohio Casualty Policies requires Defendant Ohio Casualty to defend and indemnify Pulte against all claims that allege (duty to defend) and result in (duty to indemnify) liability for covered property damage or bodily injury arising out of the CMW's work or operations.

**The Navigators Policies**

115.   CMW obtained the following commercial general liability policies from Navigators (the "Navigators Policies"):

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---|---|---|---|---|
| Navigators | HO15CGL150425 IC | 2/28/15 – 2/28/16 | CMW | Pulte |
| Navigators | HO16CGL150425 IC | 2/28/16 – 2/28/17 | CMW | Pulte |
| Navigators | HO17CGL216544 IC | 2/28/17 – 2/28/18 | CMW | Pulte |
| Navigators | HO18CGL216544 IC | 2/28/18 – 2/28/19 | CMW | Pulte |

116.   The Navigators Policies are endorsed to cover Pulte as an "additional insured" with respect to liability arising out of CMW's work.

117.   The coverage afforded under the Navigators Policies requires Defendant Navigators to defend and indemnify Pulte against all claims that allege (duty to defend) and result in (duty to indemnify) liability for covered property damage or bodily injury arising out of the CMW's work or operations.

**The National Union Policies**

118.   ISI Design & Install dba Creative Touch ("ISI") performed work at the Project pursuant to one or more written subcontracts that it entered into with Pulte.

119.    Each subcontract required ISI to maintain commercial general liability insurance with minimum limits of $1,000,000 combined single limit per occurrence, $2,000,000 general aggregate, and $2,000,000 products/completed operations aggregate, and to name Pulte and its affiliates as additional insureds under those insurance policies.

120.    ISI obtained the following commercial general liability policies from National Union (the "National Union Policies"):

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---|---|---|---|---|
| National Union | 1871938 | 8/30/08 – 8/30/09 | ISI | Pulte |
| National Union | 0939610 | 8/30/09 – 8/30/10 | ISI | Pulte |
| National Union | 4360819 | 8/30/10 – 8/30/11 | ISI | Pulte |
| National Union | 2449606 | 8/30/11 – 8/30/12 | ISI | Pulte |
| National Union | 7146353 | 8/30/12 – 8/30/13 | ISI | Pulte |
| National Union | 5302603 | 8/30/13 – 8/30/14 | ISI | Pulte |
| National Union | 2047418 | 8/30/14 – 8/30/15 | ISI | Pulte |
| National Union | 3333254 | 8/30/15 – 8/30/16 | ISI | Pulte |

121.    The National Policies are endorsed to cover Pulte as an "additional insured" with respect to liability arising out of ISI's work.

122.    The coverage afforded under the National Union Policies requires Defendant National Union to defend and indemnify Pulte against all claims that allege (duty to defend) and result in (duty to indemnify) liability for covered property damage or bodily injury arising out of the ISI's work or operations.

**The Starr & Starr Surplus Policies**

123.    ISI and Magnum each obtained the following commercial general liability policies from Starr and Starr Surplus (the "Starr & Starr Surplus Policies"):

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---|---|---|---|---|

| Starr | 1000025503161 | 5/15/16 – 5/15/17 | ISI | Pulte |
| Starr Surplus | SLPGGL0118800 | 10/21/11 – 10/21/12 | Magnum | Pulte |
| Starr Surplus | SLPG-GL0292500 | 10/21/14 – 10/21/15 | Magnum | Pulte |

124. The Starr & Starr Surplus Policies are endorsed to cover Pulte as an "additional insured" with respect to liability arising out of ISI and Magnum's work.

125. The coverage afforded under the Starr & Starr Surplus Policies requires Defendants Starr and Starr Surplus to defend and indemnify Pulte against all claims that allege (duty to defend) and result in (duty to indemnify) liability for covered property damage or bodily injury arising out of the ISI and Magnum's work or operations.

**The Hallmark Policies**

126. Form-Cove and Southwest obtained the following commercial general liability policy from Hallmark (the "Hallmark Policies"):

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---|---|---|---|---|
| Hallmark | 44-CL-434796-03 | 10/21/07 – 10/21/08 | Southwest | Pulte |
| Hallmark | 44-CL-434796-04 | 10/21/08 – 10/21/09 | Southwest | Pulte |
| Hallmark | 44CL468791 | 4/1/11 – 4/1/13 | Form-Cove | Pulte |
| Hallmark | CLP8124294 | 4/1/08 – 4/1/09 | Form-Cove | Pulte |
| Hallmark | CLP9579802 | 4/1/13 – 4/1/20 | Form-Cove | Pulte |

127. The Hallmark Policies are endorsed to cover Pulte as an "additional insured" with respect to liability arising out of Southwest and Form-Cove's work.

128. The coverage afforded under the Hallmark Policies require Defendant Hallmark to defend and indemnify Pulte against all claims that allege (duty to defend) and result in (duty to indemnify) liability for covered property damage or bodily injury arising out of Southwest and Form-Cove's work or operations.

**The Southern Policy**

129.     Heads Up Landscaping Contractors, Inc. ("Heads Up") performed work at the

Project pursuant to one or more written subcontracts that it entered into with Pulte.

130.     Each subcontract required Heads Up to maintain commercial general liability

insurance with minimum limits of $1,000,000 combined single limit per occurrence, $2,000,000

general aggregate, and $2,000,000 products/completed operations aggregate, and to name Pulte

and its affiliates as additional insureds under those insurance policies.

131.     Heads Up obtained the following commercial general liability policy from

Southern (the "Southern Policy"):

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---------|---------------|---------------|---------------|--------------------|
| Southern | CMP5510443 | 1/1/11 – 1/1/12 | Heads Up | Pulte |

132.     The Southern Policy is endorsed to cover Pulte as an "additional insured" with

respect to liability arising out of Heads Up's work.

133.     The coverage afforded under the Southern Policy requires Defendant Southern to

defend and indemnify Pulte against all claims that allege (duty to defend) and result in (duty to

indemnify) liability for covered property damage or bodily injury arising out of the Heads Up's

work or operations.

**The National Fire- Hartford Policy**

134.     Heads Up obtained the following commercial general liability policy from

National Fire- Hartford (the "National Fire-Hartford Policy"):

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---------|---------------|---------------|---------------|--------------------|
| National Fire - Hartford | 5090924770 | 1/1/13 – 1/1/18 | Heads Up | Pulte |

135.     The National Fire- Hartford Policy is endorsed to cover Pulte as an "additional

insured" with respect to liability arising out of Heads Up's work.

136.     The coverage afforded under the National Fire- Hartford Policy requires Defendant National Fire – Hartford to defend and indemnify Pulte against all claims that allege (duty to defend) and result in (duty to indemnify) liability for covered property damage or bodily injury arising out of the Heads Up's work or operations.

**The West American Policy**

137.     Heads Up obtained the following commercial general liability policy from West American (the "West American Policy"):

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---------|---------------|---------------|---------------|--------------------|
| West American | BKW53282219 | 1/1/08 – 1/1/09 | Heads Up | Pulte |

138.     The West American Policy is endorsed to cover Pulte as an "additional insured" with respect to liability arising out of Heads Up's work.

139.     The coverage afforded under the West American Policy requires Defendant West American to defend and indemnify Pulte against all claims that allege (duty to defend) and result in (duty to indemnify) liability for covered property damage or bodily injury arising out of the Heads Up's work or operations.

**The Endurance Policies**

140.     Magnum obtained the following commercial general liability policy from Endurance (the "Endurance Policy"):

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---------|---------------|---------------|---------------|--------------------|
| Endurance | CBC20000801000 | 10/21/15 – 10/21/16 | Magnum | Pulte |
| Endurance | CBC10000103900 | 10/21/16 – 10/21/17 | Magnum | Pulte |

141.     The Endurance Policies are endorsed to cover Pulte as an "additional insured" with respect to liability arising out of Magnum's work.

142.     The coverage afforded under the Endurance Policies requires Defendant Endurance to defend and indemnify Pulte against all claims that allege (duty to defend) and result in (duty to indemnify) liability for covered property damage or bodily injury arising out of the Magnum's work or operations.

**The Old Republic Policies**

143.     Masco Cabinetry ("Masco") performed work at the Project pursuant to one or more written subcontracts that it entered into with Pulte.

144.     Each subcontract required Masco to maintain commercial general liability insurance with minimum limits of $1,000,000 combined single limit per occurrence, $2,000,000 general aggregate, and $2,000,000 products/completed operations aggregate, and to name Pulte and its affiliates as additional insureds under those insurance policies.

145.     Masco obtained the following commercial general liability policies from Old Republic (the "Old Republic Policies"):

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---|---|---|---|---|
| Old Republic | MWZY5552508 | 6/30/08 – 6/30/09 | Masco | Pulte |
| Old Republic | MWZY5552509 | 6/30/09 – 6/30/10 | Masco | Pulte |
| Old Republic | MWZY5552511 | 6/30/11 – 6/30/12 | Masco | Pulte |
| Old Republic | MWZY5552512 | 6/30/12 – 6/30/13 | Masco | Pulte |
| Old Republic | MWZY5552513 | 6/30/13 – 6/30/14 | Masco | Pulte |
| Old Republic | MWZY5552514 | 6/30/14 – 6/30/15 | Masco | Pulte |
| Old Republic | MWZY5552515 | 6/30/15 – 6/30/16 | Masco | Pulte |
| Old Republic | MWZY307518 | 6/30/16 – 6/30/17 | Masco | Pulte |
| Old Republic | MWZY313071 | 6/30/17 – 6/30/18 | Masco | Pulte |
| Old Republic | MWZY310455 | 6/30/18 – 6/30/19 | Masco | Pulte |

146.    The Old Republic Policies are endorsed to cover Pulte as an "additional insured" with respect to liability arising out of Masco's work.

147.    The coverage afforded under the Old Republic Policies requires Defendant Old Republic to defend and indemnify Pulte against all claims that allege (duty to defend) and result in (duty to indemnify) liability for covered property damage or bodily injury arising out of the Masco's work or operations.

**The Knight Specialty Policy**

148.    Otero obtained the following commercial general liability policy from Knight Specialty (the "Knight Specialty Policy"):

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---|---|---|---|---|
| Knight Specialty | KSVENA160035204 | 1/1/16 – 1/1/17 | Otero | Pulte |

149.    The Knight Specialty Policy is endorsed to cover Pulte as an "additional insured" with respect to liability arising out of Otero's work.

150.    The coverage afforded under the Knight Specialty Policy requires Defendant Knight Specialty to defend and indemnify Pulte against all claims that allege (duty to defend) and result in (duty to indemnify) liability for covered property damage or bodily injury arising out of the Otero's work or operations.

**The Peleus Policy**

151.    Chavez Roofing obtained the following commercial general liability policy from Peleus (the "Peleus Policy"):

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---|---|---|---|---|
| Peleus | 103 GL 0021470-00 | 10/1/18 – 10/1/19 | Chavez Roofing | Pulte |

152.    The Peleus Policy is endorsed to cover Pulte as an "additional insured" with respect to liability arising out of Chavez Roofing's work.

153.    The coverage afforded under the Peleus Policy requires Defendant Peleus to defend and indemnify Pulte against all claims that allege (duty to defend) and result in (duty to indemnify) liability for covered property damage or bodily injury arising out of the Chavez Roofing's work or operations.

**The *Allingham* Claim**

154.    On or around November 8, 2019, homeowners in the Loma Colorado community filed Complaint against Pulte in Sandoval County, New Mexico State Court, Thirteenth Judicial District, entitled *Mack & Susan Allingham, et al. v. Pulte Homes of New Mexico, Inc.*, *et al.*, Case No.: D-1329-CV-2019-02462 (the "*Allingham* Claim") alleging property damage to their homes as a result of defective construction, including but not limited to, property damage to and arising out from the construction of the assembly of the building envelopes, balconies, roofs, grading, and damage from building movement. The *Allingham* Claim has now been moved to arbitration before the American Arbitration Association, AAA Case No. 01-20-0007-2491.

155.    The *Allingham* claimants seek damages from Pulte for property damage arising out of the work, operations and/or ongoing operations of the Defendant insurers' named insured contractors listed herein.

156.    As a result of the *Allingham* Claim, Pulte has incurred and will continue to incur significant costs, including, but not limited to, forensic, investigative, and repair costs, attorneys' fees and other expenses.

157.    The *Allingham* claimants are seeking damages from Pulte for property damage arising out of and/or resulting from the Defendants' named insured subcontractors' work on the Project. If the homeowner-plaintiffs in *Allingham* are successful in obtaining an award against

Pulte, Pulte will have incurred liability arising out of and/or resulting from the work of the Defendants' named-insured subcontractors.

158.    Pulte tendered its defense and indemnity of the *Allingham* Claim to each of the Defendant insurers under the insurance policies listed herein.

159.    The Defendants rejected—or otherwise failed to respond to—Pulte's tenders for defense and indemnity of the *Allingham* Claim, leaving Pulte with substantial unreimbursed defense costs.

160.    Pursuant to the insurance policies issued by the Defendants to their respective named-insured subcontractors, as specified herein, the Defendants owe a duty to pay all of the defense fees and costs that Pulte incurred and will continue to incur in defending against the *Allingham* Claim.

161.    Pursuant to the insurance policies issued by the Defendants to their respective named-insured subcontractors, as specified herein, the Defendants have a duty to indemnify Pulte for any liability Pulte incurs as a result of the *Allingham* Claim for property damage that arises out of and/or that is caused in whole or in part by the Defendants' respective named insured subcontractors' work.

162.    The Defendants breached their duties by refusing to defend Pulte. On information and belief, Defendants misrepresented policy provisions and/or material facts related to coverage, failed to make prompt payment of Pulte's demands for reimbursement of its defense costs, and/or otherwise failed to respond to Pulte's tender of its defense of the *Allingham* Claim. As a result of Defendants' conduct, Pulte has been forced to expend significant resources defending itself against the *Allingham* Claim. As of the date of the filing of this Complaint, Pulte has incurred more than $230,000 in attorneys' fees and costs defending against the *Allingham* Claim, and will continue to incur significant expenses defending against the *Allingham* Claim, which is ongoing.

163.    Upon information and belief, the Defendants failed to investigate or timely respond to Pulte's tender of defense and indemnity, if they responded at all.

164.    Upon information and belief, the Defendants failed to consider the allegations in the pleadings, facts provided by Pulte, or facts easily discernable

165.    Pleading further and in the alternative, in addition to these specific allegations based on insurance policy endorsements directly adding Pulte as an additional insured to each policy issued by the Defendants and listed herein, each policy listed herein above contained a provision or provisions the effect of which is to allow Pulte to stand in the shoes of the Defendants' named-insured subcontractors for purposes of coverage.

166.    The above is not an exclusive list of the Defendants' potential liability to Pulte as other theories of potential coverage and recovery may be apparent based on the specific policies and/or specific actions of each Defendant.

## FIRST CAUSE OF ACTION

### Declaratory Judgment
(By Pulte Against All Defendants)

167.    Pulte realleges the allegations contained in paragraphs 1 through 174 inclusive, and incorporates them by reference as though fully set forth herein.

168.    Pulte is named as an additional insured or is a known third-party beneficiary of each of the insurance policies issued by the Defendants listed herein.

169.    Under N.M.S.A. (1975), § 44-6-4, "[a]ny person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder." N.M.S.A. (1975), § 44-6-4.

170.    Therefore, under N.M.S.A. (1975), § 44-6-4, Pulte seeks a judicial resolution of the controversy and a declaration of the following:

i. Pulte is an additional insured under the Defendants' policies listed herein based on specific endorsements to the policy and/or the insured contracts between Pulte and the Defendants' named-insured subcontractors;

ii. The Defendants have a duty to fully defend Pulte that was triggered by the allegations in the underlying complaint, facts brought to the Defendants' attention, or through facts that could have been acquired through a reasonable investigation;

iii. The Defendants' must indemnify Pulte for damages arising out of the work or operations of Defendants' named-insured subcontractors.

## SECOND CAUSE OF ACTION

### Breach of Contract
(By Pulte Against All Defendants)

171.    Pulte realleges the allegations contained in paragraphs 1 through 178, inclusive, and incorporates them by reference as though fully set forth herein.

172.    Pulte requested that Defendants defend Pulte against the *Allingham* Claim under the insurance policies each of the Defendants issued to their respective named-insured subcontractors, as described more fully above. Pulte has performed all obligations owing under each of the policies in connection with its tender of defense, and Pulte has satisfied all relevant conditions precedent.

173.    Defendants have failed to discharge their contractual duties to defend Pulte against the *Allingham* Claim. More particularly, Defendants: (1) breached their contracts by failing to promptly respond to Pulte's tenders, if they responded at all; (2) breached their contracts by refusing to provide Pulte with a defense; and (3) breached their contracts by refusing to fully investigate Pulte's tender.

174.     As a direct and proximate result of Defendants' conduct as alleged in this Complaint, Pulte has been damaged and will continue to be damaged in an amount to be proven at trial.

### THIRD CAUSE OF ACTION

**Breach of Contract on Direct Action as Indemnitee Under an "Insured Contract"**
(By Pulte Against All Defendants)

175.     Pulte realleges the allegations contained in paragraphs 1 through 182, inclusive, and incorporates them by reference as though fully set forth herein.

176.     Pleading further and in the alternative, Pulte has direct rights as an additional insured under the Defendants' policies listed herein.

177.     However, Pulte is also entitled to recover defense and indemnity costs in the *Allingham* Claim by standing in the shoes of the Defendants' named-insured Subcontractors.

178.      Pulte is entitled to be indemnified and defended from each of the Defendants' named-insured subcontractors listed herein, pursuant to clear provisions in the contracts between Pulte and the Defendants' named-insured subcontractors.

179.     The policies issued by the Defendants provide defense and indemnity for contractual liability arising from their respective Named Insured Subcontractors' work assumed in an "insured contract".

180.     The Defendants' named-insured subcontractors' contracts with Pulte are "insured contracts" within the definitions set out in the Defendants' policies.

181.     Because Defendants' named-insured subcontractors owe defense and indemnity to Pulte under their contracts and the Defendants owe defense and indemnity to their named insured subcontractors for liability assumed in an "insured contract," under New Mexico law, Pulte can recover directly from the Defendants for their named-insured subcontractors' liability under the indemnity and defense provision of the contract. *See Krieger v. Wilson Corp.*, 2006-NMCA-034,

¶ 45, 139 N.M. 274 (holding that "a potential indemnitee under an insured contract, …can reasonably claim to stand in the shoes of [the] insured.")

## FOURTH CAUSE OF ACTION

**(Violation of the New Mexico Unfair Insurance Practice Act)**
(By Pulte Against All Defendants)

182.    Pulte realleges the allegations contained in paragraphs 1 through 189, inclusive, and incorporates them by reference as though fully set forth herein.

183.    Section 59A-16-l, et seq. NMSA, prohibits certain insurance practices.

184.    The Unfair Insurance Practices Act does not limit its availability to the named insured. See NMSA § 59A-16-30; *Hovet v. Allstate Ins. Co.*, 2004-NMSC-010, ¶ 16, 135 N.M. 397.

185.     By denying coverage to Pulte as an additional insured, each of the Defendants have violated New Mexico law by, including without limitation, the following:

> a. failing to adopt and implement reasonable standards for the prompt
> investigation and processing of insured's claims arising under policies;
> b. not attempting in good faith to effectuate prompt, fair, and equitable
> settlements of an insured's claims in which liability has become reasonably
> clear;
> c. misrepresenting the benefits, advantages, conditions, or terms of any policy;
> and
> d. failing to disclose material facts reasonably necessary to prevent other
> statements made from being misleading.

186.    As a result of the Insurance Defendants' actions and breaches, Pulte has suffered damages including but not necessarily limited to incurring attorneys' fees and other costs of defense in the above described matters.

## FIFTH CAUSE OF ACTION

### (Bad Faith)
(By Pulte Against All Defendants)

187.    Pulte realleges the allegations contained in paragraphs 1 through 194, inclusive, and incorporates them by reference as though fully set forth herein.

188.    Each of the Defendants owes duties to act honestly and in good faith with its insureds and to reasonably conduct a timely and fair investigation and evaluation of claims.

189.    Each of the Defendants failed to timely investigate and properly evaluate Pulte's tender of its defense and indemnity of the *Allingham* Claim, which is unreasonable under the circumstances and constitutes bad faith breaches of their duties to act honestly and in good faith and to reasonably conduct a timely and fair investigation and evaluation of Pulte's claims.

190.    Each of the Defendants have unreasonably delayed and/or denied Pulte's request for defense and indemnity, including but not limited to failing and refusing to provide an immediate, full and complete defense to Pulte.

191.     Such conduct constitutes bad faith breaches that warrant compensatory damages.

192.    Furthermore, each of the Insurance Defendants' reasons for delay and/or denial of Pulte's claims are frivolous and unfounded.

193.    The conduct of the Insurance Defendants constitutes bad faith, malicious, willful, reckless, and wanton conduct warranting an award of punitive damages.

## PRAYER

WHEREFORE, Pulte prays for judgment against Defendants as follows:

1.    **FIRST CAUSE OF ACTION**:

   a.    For declaratory relief as described above;

   b.    For all costs and expenses at the full extent permitted by law;

   c.    For pre-judgment interest and post-judgment interest at the full extent permitted by law;

  d.  For attorneys' fees to the extent recoverable by applicable law; and

  e.  For such other and further relief as the Court deems fair and proper.

2.  **SECOND CAUSE OF ACTION**:

  a.  For general and specific damages in an amount to be proven at trial;

  b.  For punitive damages at the full extent permitted by law;

  c.  For all costs and expenses at the full extent permitted by law;

  d.  For pre-judgment interest and post-judgment interest at the full extent permitted by law;

  e.  For 18% per annum of the amount of Pulte's claim;

  f.  For attorneys' fees to the extent recoverable by applicable law, which shall be taxed against the Defendants as costs, and

  g.  For such other and further relief as the Court deems fair and proper.

3.  **THIRD CAUSE OF ACTION**:

  a.  For general and specific damages in an amount to be proven at trial;

  b.  For punitive damages at the full extent permitted by law;

  c.  For all costs and expenses at the full extent permitted by law;

  d.  For pre-judgment interest and post-judgment interest at the full extent permitted by law;

  e.  For 18% per annum of the amount of Pulte's claim;

  f.  For attorneys' fees to the extent recoverable by applicable law, which shall be taxed against the Defendants as costs, and

  g.  For such other and further relief as the Court deems fair and proper.

4.  **FOURTH CAUSE OF ACTION**:

  a.  For general and specific damages in an amount to be proven at trial;

  b.  For punitive damages at the full extent permitted by law;

c.      For all costs and expenses at the full extent permitted by law;

d.      For pre-judgment interest and post-judgment interest at the full extent permitted by law;

e.      For 18% per annum of the amount of Pulte's claim;

f.      For attorneys' fees to the extent recoverable by applicable law, which shall be taxed against the Defendants as costs, and

g.      For such other and further relief as the Court deems fair and proper.

5.      **<u>FIFTH CAUSE OF ACTION</u>**:

a.      For general and specific damages in an amount to be proven at trial;

b.      For punitive damages at the full extent permitted by law;

c.      For all costs and expenses at the full extent permitted by law;

d.      For pre-judgment interest and post-judgment interest at the full extent permitted by law;

e.      For 18% per annum of the amount of Pulte's claim;

f.      For attorneys' fees to the extent recoverable by applicable law, which shall be taxed against the Defendants as costs, and

g.      For such other and further relief as the Court deems fair and proper.

DATED: January 24, 2023                PAYNE & FEARS LLP

<div style="margin-left:40%">

*/s/ Sarah J. Odia*
_____

Scott S. Thomas, Bar No. 21-275
Sarah J. Odia, Bar No. 21-279
PAYNE & FEARS LLP
4 Park Plaza, Suite 1100
Irvine, California 92614
Phone (949) 851-1100
Fax (949) 851-1212
Email: sst@paynefears.com; sjo@paynefears.com;
Attorneys for Plaintiffs

</div>

## JURY DEMAND

Plaintiffs PULTE HOMES OF NEW MEXICO, INC. and PULTE DEVELOPMENT

NEW MEXICO, INC. hereby demand a trial by jury.

DATED: January 24, 2023                    PAYNE & FEARS LLP


_____/s/ Sarah J. Odia_____
Scott S. Thomas, Bar No. 21-275
Sarah J. Odia, Bar No. 21-279
PAYNE & FEARS LLP
4 Park Plaza, Suite 1100
Irvine, California 92614
Phone (949) 851-1100
Fax (949) 851-1212
Emails: sst@paynefears.com; sjo@paynefears.com

Attorneys for Plaintiffs

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 24th day of January, 2023, a true and correct copy

of **PLAINTIFFS' FIRST AMENDED COMPLAINT** was served via the United States District

Court CM/ECF system on all parties or persons requiring notice.

By   */s/ Jennifer Stephens*
　　　　　　　Jennifer Stephens, an Employee of
　　　　　　　PAYNE & FEARS LLP